UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ELAINE M. SWENSON, | ) | |
| Plaintiff | ) ) ) | |
| v. | ) | 1:17-cv-00270-NT |
| SOCIAL SECURITY ADMINISTRATION ACTING COMMISSIONER, | ) ) ) ) | |
| Defendant | ) | |

**REPORT AND RECOMMENDED DECISION**

On Plaintiff Elaine M. Swenson's application for disability insurance benefits under Title II of the Social Security Act, Defendant, the Social Security Administration Acting Commissioner, found that Plaintiff has severe impairments but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

**The Administrative Findings**

The Commissioner's final decision is the March 15, 2016, decision of the Administrative Law Judge (ALJ) (ECF No. 10-3).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20

---

[1] Because the Appeals Council found no reason to review that decision (ECF No. 10-2, R. 1), the Acting Commissioner's final decision is the ALJ's decision.

C.F.R. § 404.1520.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of fibromyalgia, carpal tunnel syndrome, and affective and anxiety-related disorders. (ALJ Decision at 4, ¶¶ 3 – 4, R. 119 – 20.) In the ALJ's assessment, the limitations restrict Plaintiff's work capacity, but leave her with the residual functional capacity to perform light work that is simple, routine, and repetitive, including work that requires frequent fingering, handling, and reaching. Plaintiff cannot negotiate ladders, ropes or scaffolds, and can negotiate ramps and stairs, crawl, stoop, kneel and crouch on no more than an occasional basis. Additionally, Plaintiff must avoid concentrated exposure to extreme cold and can only work in a low stress environment, defined as one that involves only occasional decision-making and changes in work setting. (*Id.* at 7, ¶ 5, R. 122.) As to Plaintiff's claim of mental impairment, the ALJ wrote: "The evidence of record does not support a finding that the claimant's symptoms resulted in marked or extreme mental status abnormalities or work-related limitations." (R. 125.)

The ALJ also determined, based in part on vocational expert testimony, that given Plaintiff's age, residual functional capacity, and vocational background, Plaintiff would be able to perform other work existing in the national economy, including the representative jobs of hand packager inspector, bench assembler, mail sorter, and price marker. (*Id.* at 13, ¶ 10, R. 128.) Because the ALJ concluded that Plaintiff can perform substantial gainful activity, he found Plaintiff was not disabled for purposes of the Social Security Act for the period commencing with the alleged onset date, July 1, 2011, through the date of decision. (*Id.* at 14, ¶ 11, R. 129.)

**Standard of Review**

The Court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS,* 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion**

Plaintiff challenges the ALJ's assessment of the limitation on her ability to interact with the public, which limitation was included in the ALJ's residual functional capacity (RFC) finding. Plaintiff also contends the ALJ erred when he failed to include in a hypothetical question posed to the vocational expert, every functional limitation in the RFC, and specifically the limitation that precludes Plaintiff from working with the public.

**A.     Whether the ALJ Erred in His Assessment of Plaintiff's RFC**

With respect to Plaintiff's RFC, the record contains medical expert opinion evidence exclusively from agency consulting physicians. In other words, the record does not include an RFC opinion from a treating source. Brian Stahl, Ph.D., opined on January 21, 2014, that Plaintiff is able to understand and remember at least simple instructions and tasks, but

3

not complex information; to work in 2 hour blocks performing simple tasks over the normal workday/week; to work with supervisors and coworkers; and to adapt to simple changes; but is not able to work with the public. (Ex. 1A, R. 68 – 70.) Dr. Stahl provided his assessment in connection with the initial denial of Plaintiff's Title II claim by Disability Determination Services. Upon Plaintiff's request for reconsideration, on December 22, 2014, Thomas Knox, Ph.D., provided an expert assessment that was consistent with Dr. Stahl's assessment. (Ex. 3A, R. 81 – 83.)

The record also includes an earlier opinion from Dr. Knox, which opinion Dr. Knox provided in connection with the administrative review of a prior claim Plaintiff made for disability insurance benefits. (Ex. 7A, ECF No. 10-3.) At that time, after reviewing a December 2012 psychological assessment issued by John Hale, Ed. D. (Ex. 28F, ECF No. 10-8), Dr. Knox suggested that Plaintiff might have some ability to work with the public. Specifically, he noted that Plaintiff could "not consistently" work with the public. (R. 107.)

After reviewing the medical evidence of record, Plaintiff's testimony, and Plaintiff's activities of daily living, and discussing his impressions of the evidence (R. 124 – 126), the ALJ concluded that the opinions of Drs. Stahl and Knox should receive "great weight" because the opinions were "supported by the normal findings to relatively mild abnormalities on mental status examination and with the claimant's activities of daily living." (R. 126.)

The ALJ also considered Dr. Hale's opinion.[2] The ALJ did not give significant

---

[2] Dr. Hale wrote in his findings that Plaintiff showed no indication of psychosis or difficulty orienting to her environment, appeared to be thinking clearly (but there seemed to be themes of paranoia and an

4

weight to Dr. Hale's opinion because the opinion was "equivocal, vague and imprecise," "assessed no specific work-related limitations to clarify the nature of the claimant's abilities or functional capacity." In contrast, the ALJ found Drs. Stahl and Knox's opinions of Plaintiff's RFC to be both specific and reliable. (R. 126.)

In effect, the ALJ concluded that Drs. Stahl and Knox's RFC assessments were in accord with his assessment following a review of the record. The ALJ, therefore, rejected Dr. Hale's opinion.

Plaintiff argues Dr. Hale's opinion should control because he was the only examining expert. Plaintiff also argues the ALJ's analysis is not supportable because the ALJ did not discuss the specific factors for evaluating opinion evidence listed in 20 C.F.R. § 404.1527 when he rejected Dr. Hale's opinion. Plaintiff further contends that Dr. Hale's opinion is reinforced by a treatment note generated by Peter Ippoliti, Ph.D. (Northeast Occupational Exchange, December 2013), who recounts Plaintiff's report of crippling anxiety, disassociative episodes, PTSD and other symptoms. (Ex. 9F, R. 530 – 535, ECF No. 10-7.) Dr. Ippoliti, however, did not provide a treating source assessment of Plaintiff's RFC. Finally, Plaintiff argues the ALJ was required to contact Dr. Hale for clarification if he considered Dr. Hale's opinion to be unclear.

Through her arguments, Plaintiff in part essentially asks the Court to find different

---

excessively suspicion personality), had intact activities of daily living, was able to communicate effectively, and showed some difficulty with emotions but not with behavior. (Ex. 28F, R. 711, ECF No. 10-8.) Dr. Hale provided a medical source statement that Plaintiff "likely would have problems following work-related rules," would be "questionable" when it comes to dependability, likely would be impacted by mood in the areas of concentration and persistence, and likely would have a problematic time interacting with others in the workplace. (R. 712.)

5

facts than those found by the ALJ. The review on appeal, however, is limited to whether the decision is supported by substantial evidence on the record. *Manso-Pizarro*, 76 F.3d at 16.

Plaintiff's reliance on the ALJ's failure to discuss specifically the factors in 20 C.F.R. § 404.1527 is also unavailing. Although the Commissioner must give "good reasons" for rejecting a treating source's opinion of a claimant's RFC, 20 C.F.R. § 404.1527(c)(1), the ALJ does not have a similar obligation with respect to the opinion of an agency consultant or a one-time consultant hired by the claimant. *Bowie v. Colvin*, No. 2:12-cv-00205-DBH, 2013 WL 1912913, at *7 (D. Me. Mar. 31, 2013) (one-time examining consultant not subject to treating source rule). The administrative process required that Dr. Hale's findings be considered with the longitudinal treatment record for purposes of the RFC assessment. 20 C.F.R. § 404.1513a, 404.1517, 404.1519a. Where the non-examining agency experts have reviewed the material evidence contained in the medical record,[3] and the record does not include conflicting opinion evidence from a treating source, the opinions of the agency experts about the claimant's RFC can constitute substantial evidence of a claimant's RFC. *Pressey v. Berryhill*, No. 2:16-cv-00425-JDL, 2017 WL 2731308, at *3 (D. Me. June 25, 2017), *adopted*, 2017 WL 3711558 (D. Me. Aug. 28, 2017).

Here, Drs. Stahl and Knox reviewed the material evidence and assessed Plaintiff's

---

[3] The medical evidence of record reviewed by Drs. Stahl and Knox included the more recent Northeast Occupational Exchange records, which records include Dr. Ippoliti's treatment notes. (Ex. 1A, R. 63, 65; Ex. 3A, R. 75 – 76).

6

RFC in the same manner as the ALJ. Their expert assessments constitute substantial evidence in support of the ALJ's RFC finding. Furthermore, neither the record nor the relevant regulations required the ALJ to direct a second consultative examination by Dr. Hale, or to request clarification from Dr. Hale regarding the report he issued in connection with the prior claim. The fact that Dr. Hale did not express his medical source statement in absolute terms does not invalidate the ALJ's RFC finding.

**B.     Whether Substantial Evidence Supports the ALJ's Step 5 Finding**

At step 5 of the evaluation process, the burden shifts to the Commissioner to establish that the jobs a claimant can perform exist in the national economy in significant numbers, giving particular attention to the claimant's age, education, work experience, and residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1), 416.920(a)(4)(v), (g)(1); *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 7 (1st Cir. 1982). This burden is typically addressed through a combined reliance on the Medical–Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, and the testimony of a vocational expert, who is asked to consider one or more hypothetical RFC findings. *Goodermote*, 690 F.2d at 7; *Arocho v. Sec'y of HHS*, 670 F.2d 374, 375 (1st Cir. 1982).

Plaintiff correctly notes that when the ALJ proposed an RFC for the vocational expert to consider, the ALJ omitted from the RFC the fact that the prospective worker would not be able to engage with the public. In this case, the omission does not mandate remand. At step 5, the ALJ found Plaintiff was not disabled based on testimony that a person with all of the other limitations contained in Plaintiff's RFC would be able to perform the occupations of hand packager inspector (DOT # 559.687-074), bench

7

assembler (DOT # 706.684-022), mail sorter (DOT # 209.687-026), and price marker (DOT # 209.587-034). Plaintiff's inability to work with the public would not prevent her from performing the jobs identified by the vocational expert. Under the Dictionary of Occupational Titles (DOT), the identified jobs do not require public interaction.

Under the DOT, a job definition that includes the designation "People: 8—Taking Instructions—Helping," and does not otherwise mention public interaction will support a step 5 determination for a claimant capable of handling "usual work situations not involving the public," provided that the job exists in significant numbers in the national economy. *Gleason v. Colvin*, No. 1:15-cv-00012-NT, 2015 WL 7013661, at *5 (Oct. 15, 2015), *adopted*, 2015 WL 7012739 (D. Me. Nov. 12, 2015).[4] In this case, each identified job is coded with the "People:8" designation (the fifth digit in the DOT code). In addition, the job definitions do not suggest the worker would be required to interact with the public. Finally, the jobs exist in significant numbers as the vocational expert testified that there are more than 200,000 price marker jobs in the national economy.

In short, because the jobs identified by the vocational expert do not require interaction with the public, in this case, the fact that the hypothetical posed to the expert did not include that the worker could not interact with the public does not require remand.

**Conclusion**

Based on the foregoing analysis, I recommend the Court affirm the administrative

---

[4] See Dictionary of Occupational Titles (4th ed., Rev. 1991) ("Parts of the Occupational Definition"), 1991 WL 645965, available at https://www.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTPARTS.HTM (last visiting April 12, 2018).

8

decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 17th day of April, 2018.